UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM RANGEL, ) | Case No. CV 14-4172-KK |
| Plaintiff, ) | |
| ) | MEMORANDUM AND ORDER |
| v. ) | |
| CAROLYN W. COLVIN, Acting ) Commissioner of Social Security, ) | |
| Defendant. ) | |

Plaintiff William Rangel seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his application for Title XVI Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is AFFIRMED.

///
///
///
///
///

1

# I.

## PROCEDURAL BACKGROUND

On August 15, 2011, Plaintiff submitted an application for SSI. Administrative Record ("AR") at 16. The application was denied initially on March 1, 2012, and upon reconsideration on June 29, 2012. Id.

On July 13, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. On November 2, 2012, a hearing was held before ALJ Evelyn M. Gunn. Id. On December 19, 2012, the ALJ issued a decision denying Plaintiff's application. Id.

On January 3, 2013, Plaintiff asked the Agency's Appeals Council to review the ALJ's decision. Id. at 12. On March 31, 2014, the Appeals Council denied Plaintiff's request for review. Id. at 1.

On June 6, 2014, Plaintiff filed the instant action. This matter is before the Court on the parties' Joint Stipulation ("JS"), filed February 5, 2015, which the Court has taken under submission without oral argument.

# II.

## RELEVANT FACTUAL BACKGROUND

**A.   General Information**

Plaintiff was born on August 4, 1987, and his alleged disability onset date is March 1, 2011. Id. at 125. Plaintiff was 23 years old at the time of the onset date, and 25 years old at the time of the hearing before the ALJ.

Plaintiff completed the eleventh grade. Id. at 146. While in school, Plaintiff received "above average grades" and was enrolled in regular, as opposed to special education, courses. Id.

Plaintiff alleges disability based upon "[s]urgery on head," "weak left side," and "memory issue." Id. As will be explained further below, Plaintiff alleges he is unable to

work due to a stroke[1] that occurred in January 2011, while he lived in Mexico,[2] and due to subsequent brain surgery.[3]

**B. Medical Evidence**

    **1. Treatment at Central Neighborhood Health Foundation**

Plaintiff was treated intermittently at the Central Neighborhood Health Foundation between September 2011 and April 2012. Plaintiff received a physical examination on September 15, 2011, and was described as "alert and oriented," "in no apparent distress," and "well-developed and nourished." Id. at 226. Plaintiff complained about "right arm and leg weakness, loss of memory, loss of balance," and blurry vision in the right eye. Id.

At Plaintiff's final treatment session on April 18, 2012, he described his general health as "poor," saying he had "[d]ifficulty walking two blocks" and suffered from "[f]ainting spells or loss of consciousness." Id. at 266.

    **2. Consultative Neurological Evaluation**

On December 9, 2011, Plaintiff received a neurological evaluation by Dr. Sarah Maze, at the request of the California Department of Social Services. Id. at 237. Plaintiff complained about "weakness in the left arm and left leg"; "reduction of short-term recall"; and slowed speech and movement. Id. at 237-38. The neurological examination revealed Plaintiff to be "alert," "pleasant, cooperative, and attentive." Id. at 238. Plaintiff was able to "recall three of three items at one and five minutes." Id. Dr.

---

[1] The stroke is also referred to as a brain hemorrhage or arteriovenous malformation hemorrhage.

[2] Plaintiff was born in southern California. AR at 252. Some time before 2011, he was sent by his mother to live with relatives in Mexico. Id. at 238.

[3] The surgery is also referred to as a craniectomy.

Maze found Plaintiff had "left arm and left leg weakness," but stated that "[o]ngoing improvement is definitely expected." Id. at 240. Dr. Maze found Plaintiff "is able to stand and walk alone," but noted Plaintiff "appeared somewhat unsteady." Id. at 239. Dr. Maze found Plaintiff's "[i]ntellectual functioning appears to be in the normal range." Id.

### 3. Treatment at LAC + USC Medical Center

On August 30, 2011, Plaintiff received a triage assessment at the Los Angeles County and University of Southern California Medical Center ("LAC + USC"). Id. at 216. According to the assessment, Plaintiff spoke in "full clear sentences, ambulate[d] with steady gait," but suffered from "intermittent dizziness." Id.

Plaintiff was treated intermittently at LAC + USC from May 2012 to September 2012. See id. at 271-326. The ALJ's decision accurately summarizes the treatment records from this period as follows:

> [In May 2012], the claimant was noted to be fully alert and was "ambulatory without difficulty with strong steady gait." Also, despite alleging left-sided weakness, the claimant was noted to have equal grip strength. (Exhibit 8F:45-46). A June 2012 brain MRI scan revealed the surgical changes from the right posterior parietal craniectomy, and a head angiogram revealed no abnormalities or signs of further arteriovenous malformation. (Exhibit 8F:8, 28-31).

Id. at 19; see also id. at 316 (noting Plaintiff was "ambulatory with strong steady unassisted gait [without] devices").

### 4. Consultative Psychological Evaluation

On February 2, 2012, Plaintiff received a complete psychological evaluation by Dr. Baharen Talei. Id. at 251. Dr. Talei's evaluation states Plaintiff had a "slightly atypical" posture and gait, though he was "able to independently ambulate." Id.

4

According to the evaluation, Plaintiff complained his stroke "resulted in cognitive impairment," and denied "any history of mental disorder, treatment, distress, suicidal ideation or psychiatric hospitalization." Id. at 251-52.

After performing a mental status examination on Plaintiff, Dr. Talei found Plaintiff was socially "pleasant and cooperative"; Plaintiff's response time and work pace were "within normal limits"; Plaintiff was "oriented to person, time, place and purpose of the examination"; Plaintiff's speech was "clear"; Plaintiff's thoughts were "organized in a linear manner"; psychomotor slowing was "not evident"; Plaintiff's current intellectual functioning was "in the mild range of mental retardation to borderline range"; Plaintiff's short-term memory, long-term memory, and "attention and concentration span" were all "moderately diminished"; and Plaintiff's "insight and judgment" were "fair." Id. at 253. Dr. Talei determined Plaintiff's full-scale IQ score was 65. Id. at 254.

Regarding Plaintiff's ability to work, Dr. Talei wrote:

> [T]he claimant would be able to understand, remember and carry out short, simplistic instructions without difficulty. However, due to cognitive impairment, he presents with a moderate inability to understand, remember and carry out detailed instructions. He would be able to make simplistic work-related decisions without special supervision. . . . He presents with an intact ability to interact appropriately with supervisors, coworkers and peers on a consistent basis.

Id. at 255.

## C.   Plaintiff's Pre-Hearing Allegations

In a Function Report dated October 17, 2011, Plaintiff wrote that he lives with his mother in an apartment. Id. at 155. In response to a question about what he does from the time he wakes up until he goes to bed, Plaintiff stated he "clean[s] the apartment and surf[s] the internet." Id. Plaintiff stated he does not take care of any other people or any

pets. Id. at 156.  Plaintiff stated that, before he became disabled, he "was able to exercise and think straight [and] remember things [he] did the next day." Id.  Plaintiff stated that now he "can't work out, run, or balance" himself.  Id.

Plaintiff wrote he needs reminders to take medicine.  Id. at 157.  He stated he prepares sandwiches for himself daily.  Id.  Plaintiff wrote he washes dishes and sweeps the apartment for 20 minutes per day, and that he does not need help doing so.  Id.  Plaintiff claimed he "rarely" goes outside, and that he cannot go out alone because he does not know if he will "have another stroke."  Id. at 158.  Plaintiff wrote he does not drive because he does not have a license or car.  Id.  Plaintiff stated he can pay attention for 30 minutes; can follow written instructions; and can follow spoken instructions "at the time requested."  Id. at 160.  In response to a question about whether he needs to be reminded to go places, Plaintiff answered, "No."  Id. at 159.  Plaintiff wrote he gets along well with authority figures, and handles changes in routine well.  Id. at 161.  Plaintiff stated he does not need crutches, a cane, a walker, or a wheel chair.  Id.

**D.  ALJ Hearing**

   **1.  Plaintiff's Testimony**

At the hearing before the ALJ on November 2, 2012, Plaintiff testified the last time he worked was in 2010 and 2011, doing construction work in Mexico for approximately nine months.  Id. at 34; see also id. at 36.  When asked why he stopped "doing that work," Plaintiff answered, "There was no more job anymore."  Id. at 35-36.  Plaintiff stated he came back to California from Mexico in 2011.  Id. at 36.  Plaintiff testified he did not try to find work after he arrived in California because he was no longer able to work.  Id. at 37.

Plaintiff further testified that in January 2011, while in Mexico, he had a brain hemorrhage, which required him to be taken to the hospital, where he had surgery.  Id. at 38.  Plaintiff said the hemorrhage caused him to lose "all [his] memory."  Id.  Plaintiff said he "was a vegetable in the bed for like four months until my aunt, a physical

therapist in Mexico, started giving me physical therapy, which then I was able to stand up and walk, and then I kept going like that until I was able to come back to the U.S." Id. at 39. Plaintiff testified he had an upcoming surgery LAC + USC "to put a titanium plate in [his] head," which will "protect [his] brain." Id.

Plaintiff testified on a typical day he stays at home by himself and watches television. Id. at 40. Plaintiff stated he "get[s] bored every day" and will walk around his neighborhood for "[j]ust half an hour," then go home and "[l]ie down on the bed" because he gets a headache. Id. at 41-43. Plaintiff testified he has memory issues and forgets "[m]ostly everything." Id. at 42. Plaintiff offered the following example: "Like let's say my mom tells me, you know what, go do this for me. Like, let's say go to the store. Get me this. I go to a store and I call back. I go back like 'what was it that you wanted to get?'" Id. Plaintiff also testified he could not "follow directions real good," but said he would be able to do so if the directions were written out. Id. at 42-43.

Plaintiff testified various activities caused him to get headaches, including "walking around" and "[s]eeing television." Id. at 43. The ALJ asked Plaintiff how long his headaches last for, and Plaintiff responded, "It's not like a headache, headache," but "like bumps" he feels in his forehead. Id. at 43-44. Plaintiff said the headaches lasted for "[l]ike an hour, two hours, stuff like that." Id. at 44. The ALJ asked Plaintiff what he can do to make the headaches go away, and Plaintiff responded, "Just relax." Id.

Plaintiff testified he drops food that his mother serves him at home, because "I don't have no balance in my body whatsoever, in my hands and feet." Id. at 44. Plaintiff said he has "trouble hanging onto things with [his] hands." Id. at 45.

### 2. Vocational Expert's Testimony

A vocational expert ("VE") also testified at the hearing. The ALJ asked the VE whether a hypothetical person could work if the person was Plaintiff's age; had Plaintiff's education level; had "no past relevant work background"; could "lift/carry 10 pounds occasionally [and] five pounds frequently"; could stand and walk for two hours;

could sit for six hours; could not climb ladders or scaffolding; could not walk on uneven terrain; could not "work at heights"; could not operate a foot pedal with the left leg; had no restrictions for the use of hands; and could "understand and remember simple instructions to complete simple, repetitive tasks." Id. at 46-47. The VE answered that such a person could perform various sedentary, unskilled jobs, including as a bench hand, machine operator, and document preparer. Id. at 47-48.

The ALJ then asked the VE whether someone would be able to work with the same limitations as the first hypothetical person and the limitations Plaintiff alleged – *i.e.*, "short-term memory problems"; an inability to "remember things from day to day"; an inability to balance due to weakness on the left side of the body, which causes Plaintiff to "walk[] sideways"; headaches that "last for an hour" and require Plaintiff "to lie down, relax, and close his eyes"; and a "tendency to drop things." Id. at 48-49. The VE answered that such a person would not be able to perform any jobs. Id. at 49-50.

## III.

## **STANDARD FOR EVALUATING DISABILITY**

In order to qualify for DIB or SSI, a claimant must demonstrate a medically determinable physical or mental impairment that (1) prevents him from engaging in substantial gainful activity and (2) is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.[4]

(3) Does the claimant's impairment meet or equal one of the specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments")? If so, the claimant is found disabled. If not, proceed to step four.[5]

(4) Is the claimant capable of performing work he has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.

---

[4] In evaluating whether a mental impairment is severe, the ALJ must rate the degree of functional loss resulting from the impairment, in four areas, collectively known as "paragraph B" criteria: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); see also Maier v. Comm'r of Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998). The Agency's regulations state: "If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

[5] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). This involves, *inter alia*, evaluating the credibility of a claimant's testimony regarding his capabilities. Chaudhry v. Astrue, 688 F.3d 661, 670 (9th Cir. 2012).

Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## THE ALJ'S DECISION

**A.    Step One**

At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity since August 15, 2011, the application date." AR at 18 (citation omitted).

**B.    Step Two**

At step two, the ALJ found Plaintiff "has the following severe impairment: status post-cerebral arteriovenous malformation hemorrhage with residual left-sided weakness and cognitive disorder." Id. (citation omitted).

**C.    Step Three**

At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Id. at 19 (citations omitted).

**D.    RFC Determination**

The ALJ found Plaintiff has the RFC "to perform sedentary work . . . not involving lifting/carrying an excess of 5-10 lbs., standing and/or walking in excess of 2 hours total

per 8-hour workday, performing tasks involving climbing or working at heights, performing tasks requiring operation of foot pedals with his left foot, or performing more than simple, repetitive tasks." Id. at 21.

### E. Step Four

At step four, the ALJ found Plaintiff "has no past relevant work." Id. at 23 (citation omitted).

### F. Step Five

At step five, the ALJ found Plaintiff could perform various sedentary, unskilled jobs. Id. at 23-24.

## V.
## PLAINTIFF'S CLAIMS

Two issues are in dispute:

1. Whether the ALJ properly considered the criteria of Listing 12.05C.  JS at 3.
2. Whether the ALJ properly considered Plaintiff's testimony and made proper credibility findings.  Id. at 10.

## VI.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  This Court "may set aside a denial of benefits if it is not supported by substantial evidence or it is based on legal error." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citation and internal quotation marks omitted).

"Substantial evidence" is evidence a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance. Id.  To determine whether

substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a specific quantum of supporting evidence") (citations and internal quotation marks omitted). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation and internal quotation marks omitted).

## VII.
## DISCUSSION

**A.  The ALJ Did Not Err With Respect to Listing 12.05C.**

**1.  Background**

In explaining the denial of Plaintiff's SSI application – both initially and upon reconsideration – the Agency stated it considered whether Plaintiff's impairments met or equaled Listing 11.18 (cerebral trauma) or Listing 12.02 (organic mental disorder) in the Listing of Impairments. AR at 58-59, 73-74. The Agency found Plaintiff's impairments did not meet or equal either listing. Id.

At the hearing before the ALJ, Plaintiff's lawyer failed to argue Plaintiff's

impairments met or equaled *any* listing. Notwithstanding this failure, at step three, the ALJ analyzed whether Plaintiff's impairments met or equaled Listing 11.04 or Listing 12.02, and found they did not. Id. at 20. Thus, the ALJ found Plaintiff's impairments did not meet or equal any listing.

In assessing Plaintiff's RFC, the ALJ stated:
> As for the claimant's mental status, he has not alleged any mental deficiencies or presented any history of mental health treatment. The claimant generally performed well during Dr. Talei's consultative examination but for some diminished intellectual functioning, memory and concentration, which may be attributable to residuals from his hemorrhage and surgery and/or his limited education. In any event, Dr. Talei . . . did not assess the claimant as mentally precluded from all work activity and considered him capable of sustaining at least simple, repetitive work tasks.

Id. at 22.

### 2. Plaintiff's Contentions

Plaintiff now argues, for the first time, the "ALJ did not properly consider whether the Plaintiff meets the listing of 12.05C for mental retardation."[6] JS at 8. Plaintiff argues the "evidence clearly establishes that the plaintiff does indeed meet the criteria of 12.05C Listing of Impairments." Id. at 5. Plaintiff argues the ALJ "improperly disregarded" Dr. Talei's finding that Plaintiff had a full-scale IQ score of 65. Id. at 6.

Plaintiff suggests his mental impairment pre-dates his stroke in January 2011, by noting he did not finish high school, and by stating, without any citation: "[A] person's IQ does not generally fluctuate a great deal throughout their life – it stays in the same

---

[6] Plaintiff does not challenge the ALJ's findings with respect to Listing 11.04 or Listing 12.02.

13

range." Id.

### 3. Discussion

#### a. Relevant Law

At step three, if the claimant has "present[ed] evidence in an effort to establish equivalence" to a listed impairment, the ALJ may not simply state that the Plaintiff "did not equal the listing." Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013) (citation and internal quotation marks omitted); Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). Rather, the ALJ must "discuss the combined effects of [the] claimant's impairments" and compare them to a listed impairment. Kennedy, 738 F.3d at 1178 (citation and internal quotation marks omitted); see also Marcia, 900 F.2d at 176 ("[I]n determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments.").

However, an ALJ has no obligation to consider *sua sponte* whether a claimant's impairments meet or equal a listed impairment. See Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.") (citing Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)); see also Pearsall v. Astrue, 243 F. App'x 296, 298 (9th Cir. 2007); Brooks v. Barnhart, 167 F. App'x 598, 600 (9th Cir. 2006).

A claimant satisfies Listing 12.05C, demonstrating "intellectual disability," if "he can show: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation." Kennedy, 738 F.3d at 1174 (citation omitted). "[T]he record should contain some evidence that permits an inference that the impairment existed before age 22 and is not

of recent origin due to a traumatic event or some other changed circumstance." Gomez v. Astrue, 695 F. Supp. 2d 1049, 1061 (C.D. Cal. 2010) (citation and internal quotation marks omitted).

### b. Application

Here, Plaintiff did not argue to the ALJ that his impairments met or equaled Listing 12.05C. Therefore, he did not make "an effort to establish equivalence" that would trigger a duty by the ALJ to analyze the listing. Id. at 1178. Hence, the ALJ did not err in failing to analyze *sua sponte* whether Plaintiff's impairments met or equaled Listing 12.05C. See Burch, 400 F.3d at 683.

In any event, Plaintiff's impairments do not meet or equal Listing 12.05C. That listing requires a claimant's "subaverage intellectual functioning" to be "initially manifested before age 22." Kennedy, 738 F.3d at 1174. The evidence in the record strongly indicates any "subaverage intellectual functioning" on Plaintiff's part is the result of his stroke in January 2011, when he was 23 years old. Indeed, Plaintiff stated he attended high school through the 11th grade, receiving "above average grades" in regular courses. AR at 252; see also Roybal v. Colvin, 2013 WL 4768033, at *10 (C.D. Cal. 2013) (finding, on nearly identical facts, claimant did not satisfy Listing 12.05C).

Plaintiff appears to suggest his subaverage intellectual functioning pre-dates the stroke. He notes he did not finish high school, and states: "[A] person's IQ does not generally fluctuate a great deal throughout their life – it stays in the same range." JS at 6. Plaintiff's mere failure to finish high school does not demonstrate subaverage intellectual functioning for purposes of Listing 12.05C. In addition, Plaintiff's claim about the lack of fluctuation in a person's IQ is vague, and he does not cite a single source to support it. For all of these reasons, Plaintiff has not demonstrated his impairments meet or equal Listing 12.05C, or that the ALJ erred in failing to analyze the listing.

**B.     The ALJ's Credibility Findings Were Not Improper.**

**1.     Background**

In assessing Plaintiff's RFC, the ALJ found Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." AR at 21. However, the ALJ found the medical evidence in the record did not "support the degree of disability the claimant alleges." AR at 22.

First, the ALJ noted that Plaintiff's medical records after he had brain surgery and returned to the United States show him to have "some degree" of "residual problems with left-sided weakness and diminished gait, balance and coordination." Id. However, the ALJ stated "there is no indication the claimant has required further surgeries or intensive therapy or follow-up care." Id.

Second, the ALJ stated Plaintiff "was able to generally walk unassisted during Dr. Maze's examination." Id. The ALJ noted that, at LAC + USC in 2012, Plaintiff had "a strong, steady gait and equal grip strength." Id.

Third, the ALJ noted: "[N]o treating or examining medical source has assessed the claimant as wholly precluded from all work activity on a physical basis." Id. On the contrary, the ALJ noted "Dr. Maze effectively assessed [Plaintiff] as able to sustain sedentary work activities," and Dr. Talei "considered [Plaintiff] capable of sustaining at least simple, repetitive work tasks." Id.

Finally, the ALJ noted Plaintiff "repeatedly indicated that he is capable of caring for himself and performing light, simple household chores and daily living activities, including using a computer and doing simple cleaning tasks." Id.

**2.     Plaintiff's Contentions**

Plaintiff argues the "ALJ's credibility findings are improper," because the ALJ "did not provide clear and convincing reasons for rejecting plaintiff's testimony." JS at 13, 16. Plaintiff also argues "the ALJ erred in finding that because the plaintiff is engaged in some limited activities of daily living that he is also capable of performing

and sustaining full-time competitive substantial gainful activity." Id. at 15.

### 3. Discussion

#### a. Legal Standard

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." Molina, 674 F.3d at 1112 (citation omitted). "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citations and internal quotation marks omitted). "If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear, and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." Id. (citations and internal quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Id. (citations and internal quotation marks omitted).

"In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation." Id. (citations and internal quotation marks omitted). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages in daily activities consistent with the alleged symptoms . . . ." Id. (citations and internal quotation marks omitted). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . ." Id. (citations and internal quotation marks omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citations and

internal quotation marks omitted).

"When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014) (citation and internal quotation marks omitted). Even if "the ALJ erred in relying on one of several reasons in support of an adverse credibility determination," the error is considered harmless if "the ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (citation and emphasis omitted). "So long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." Id. (citations, internal quotation marks, and alterations omitted); see also id. at 1163 ("Here, the ALJ's decision finding [the claimant] less than fully credible is valid, despite the [ALJ's] errors . . . .").

### b. Application

The ALJ provided "specific, clear, and convincing reasons" for rejecting Plaintiff's claim of total disability. Molina, 674 F.3d at 1112. First, the ALJ correctly noted that, while Plaintiff has "residual problems" from the stroke and surgery in 2011, he has not required "intensive" treatment for those problems. AR at 22. The absence of intensive treatment is a "permissible" basis to discount a claimant's allegation that his condition is completely disabling. Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (citations omitted).

Second, the ALJ also correctly noted that Plaintiff, contrary to his claims, is able to walk without assistance. Plaintiff claimed he has "no balance . . . whatsoever" and does not go outside alone. AR at 44, 158. However, Plaintiff was able to walk without assistance in front of Dr. Maze and at LAC + USC. Id. at 239, 316. Moreover, Plaintiff's own testimony contradicted his claims. Plaintiff testified he walks outside for

approximately "half an hour" during the day. Id. at 40-43. Plaintiff also stated he spends his days alone at home, where he performs various household chores without assistance. Id. at 157, 161. Plaintiff admitted he does not need a cane, walker, wheel chair, or other assistive device. Id. at 157, 161. Thus, Plaintiff's claims that he has no balance and does not go outside alone appear to be false.

Third, the ALJ also correctly noted that (1) no physician found Plaintiff to be completely disabled, and (2) both Dr. Maze and Dr. Talei stated Plaintiff could perform simple and/or sedentary work. An ALJ may reject a claimant's allegation of disability if none of the doctors who have examined the claimant "express[] the opinion that he [is] totally disabled." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

Fourth, the ALJ also correctly noted Plaintiff has said he cares for himself and performs light chores and daily living activities. Plaintiff suggests the ALJ, in making a credibility determination, placed too much emphasis on Plaintiff's "limited activities of daily living." JS at 15. These activities include "clean[ing] the apartment and surf[ing] the internet," preparing sandwiches daily, washing dishes and sweeping for 20 minutes per day, going for a half-hour walk each day, and watching television. AR at 40-43, 155, 157-58. Contrary to Plaintiff's suggestion, the ALJ did not place too much emphasis on his daily living activities. In making a credibility determination, the ALJ devoted less than a paragraph to discussing Plaintiff's daily activities, and relied far more heavily upon the absence of medical evidence supporting Plaintiff's allegations of disability. See id. at 22. In any case, a claimant's "engage[ment] in daily activities" is a permissible consideration in determining whether an allegation of disability is credible. Molina, 674 F.3d at 1112.

Finally, assuming *arguendo* "the ALJ erred in relying on one of several reasons" in making an adverse credibility finding, the "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record." Carmickle, 533 F.3d at 1162. Thus, the ALJ's decision was valid. Id.

19

# VIII.
# **CONCLUSION**

IT IS THEREFORE ORDERED that judgment be entered AFFIRMING the decision of the Commissioner.

DATED: February 26, 2015

/s/ Kenly Kiya Kato
HON. KENLY KIYA KATO
United States Magistrate Judge